UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE ANTONIO JAMES,

                         Plaintiff,                Civil Action No. 21-10006

v.                                    Nancy G. Edmunds
                                         United States District Judge

COMMISSIONER OF              David R. Grand
SOCIAL SECURITY,           United States Magistrate Judge

                         Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 17)

Plaintiff Willie Antonio James ("James") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 16, 17), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that James is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 17)** be **GRANTED**, James' Motion for Summary Judgment **(ECF No. 16)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the

ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

James was 50 years old at the time of filing his application on October 31, 2018. (PageID.193).[1]  At 5'6" tall, he weighed approximately 125 pounds during the relevant time period.  (PageID.217).  He completed up to one year in college.  (PageID.218).  He currently lives with his parents.  (PageID.76).  Previously, he worked as a security guard and a material handler.  (PageID.60, 71-72, 218).  James' alleged disabling conditions include "right hip bone on bone," lumbar disc disease, hypertension "and related dizziness," and carpal tunnel in his left hand.  (PageID.217).  He alleged an amended disability onset date of June 24, 2018.  (PageID.83-84, 209).

After James' application for SSI was denied at the initial level on February 25, 2019 (PageID.103), he timely requested an administrative hearing, which was held on October 8, 2019, before ALJ Therese Tobin (PageID.66-85).  James, who was represented by attorney Chad Franchy, testified at the hearing, as did vocational expert ("VE") Jessica Christensen.  (*Id.*).  On December 26, 2019, the ALJ issued a written decision finding that James is not disabled under the Act.  (PageID.50-62).  On November 2, 2020, the Appeals Council denied review.  (PageID.39-41).  James timely filed for judicial review of the final decision on January 4, 2021.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including James'

---

[1] Standalone citations to "PageID. __" are all to the administrative transcript in this case, which can be found at ECF No. 13.

medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past

> relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that James is not disabled under the Act.  At Step One, the ALJ found that James had not engaged in substantial gainful activity since the date of his application on October 18, 2018. (PageID.56).  At Step Two, the ALJ found that James had severe impairments of spine disorder, carpal tunnel syndrome, bilateral osteoarthritis of hip, and mild degeneration of the knees.  (*Id.*).  At Step Three, the ALJ found that James' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.56-57).

The ALJ then assessed James' residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations:

> occasionally push and pull with upper extremities; occasionally climb ramps and stairs; occasionally climb ladders ropes and scaffolds; frequently balance and stoop; frequently kneel crouch crawl; frequently handle and finger bilaterally; occasionally exposed to vibration; never exposed to unprotected heights and dangerous machinery; ***require an assisted device, such as a cane to ambulate during the work day; sit***

4

> **stand option permitting change in position every 30 minutes, if needed and without disturbing the workplace.**

(PageID.57) (emphasis added).

At Step Four, the ALJ found that James is unable to perform his past relevant work as a security guard or material handler.  (PageID.60).  At Step Five, the ALJ found, based in part on testimony provided by the VE in response to hypothetical questions, that James is capable of performing light unskilled work as a garment sorter (55,000 jobs nationally), mail clerk (51,000 jobs), and folder (53,000 jobs).  (PageID.61).  As a result, the ALJ concluded that James was not disabled under the Act since the date of his application on October 18, 2018.  (PageID.62).

## C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high.   Substantial evidence … is 'more than a mere scintilla.'"  *Id.* (internal citations omitted).   Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.   Analysis

In his motion for summary judgment, James sets forth three arguments.  First, he asserts that substantial evidence does not support the ALJ's RFC finding concerning his capacity to stand or walk during work-related activities.  (ECF No. 16, PageID.604).

6

Second, he argues that the ALJ failed to sufficiently account for consultative examiner Dr. Cynthia Shelby-Lane's opinion that he had "'frequent' limitations with standing and walking," which he contends is inconsistent with the RFC.  (*Id.*, PageID.604-06).  Third, James argues that the ALJ failed to properly evaluate his subjective complaints "with reasons supported by substantial evidence."  (*Id.*, PageID.606-10).  These arguments lack merit.

### 1.  Substantial Evidence Supports the ALJ's RFC Finding

James begins by challenging the ALJ's RFC as to his capacity to stand or walk during an 8-hour workday, arguing that "it's not clear how the sit-stand option would substantially impact [his] ability to perform the full range of light work, or if a finding of disability would have been appropriate – given the sit-stand option – under SSR 83-12." (ECF No. 16, PageID.604).  He goes on to contend that, "[t]herefore, without further reductions to the RFC finding with standing, it can be assumed that the RFC, generally, required James to be on his feet and standing for at least six hours out of an eight hour workday," which is "not supported by substantial evidence."  (*Id.*).  The Court disagrees.

As a preliminary matter, a brief overview of the applicable regulations and rulings is necessary.  Relevant here, the regulations define "light" work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. ***To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.***  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors

such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b) (emphasis added).  In contrast, "sedentary" work is defined as:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

Moreover, Social Security Ruling ("SSR") 83-10 defines a "full range of work" as "[a]ll or substantially all occupations existing at an exertional level."  SSR 83-10, 1983 WL 31251, at *6.  It also explains the difference between "frequent" and "occasionally":

> "Frequent" means *occurring from one-third to two-thirds of the time.* Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, *the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday*.  Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping.  *Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.*  They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

> * * * * * * *

> "Occasionally" means occurring from very little up to one-third of the time.  *Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday*, and sitting should generally total approximately 6 hours of an 8–hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

*Id.* at *5-6 (emphasis added).  Notably, SSR 83-12, which provides a "framework for evaluating exertional limitations within a range of work or between ranges of work," directs that:

> In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability.  Accordingly, VS [(vocational specialist)] assistance is advisable for these types of cases.

SSR 83-12, 1983 WL 31253, at *2-3.

In accordance with the above regulations and rulings, the ALJ sought testimony from a VE to determine whether jobs exist in the national economy that could be performed by a hypothetical individual with James' vocational profile and limitations, including a sit/stand option every 30 minutes and use of a cane to ambulate.  (PageID.79-81).  In response to hypothetical questions posed by the ALJ, the VE testified that an individual with the same vocational profile and limitations could perform light unskilled jobs of garment sorter (55,000 jobs nationally), mail clerk (51,000 jobs), and folder (53,000 jobs).  (PageID.80-81).[2]  As discussed below, James fails to show any reversible error here.

First, to the extent James argues that it can be "assumed" that the ALJ's RFC

---

[2] The ALJ also posed a question as to whether that same hypothetical individual above could perform work at the sedentary level, and the VE testified such individual could perform unskilled sedentary jobs of inspector (54,000 jobs nationally), order clerk (51,000 jobs), and sorter (52,000 jobs).  (PageID.81).

required him to perform "the full range of light work,"[3] the Court disagrees.  James'

assumption is belied by the express finding in the ALJ's decision that he can only perform

a *limited range* of light work: "If [James] had the [RFC] to perform ***the full range of light***

***work***, Medical-Vocational Rule 202.14 would direct a finding of 'not disabled.'  ***However,***

***[James'] ability to perform all or substantially all of the requirements of this level of***

***work has been impeded by additional limitations.***"  (PageID.61) (emphasis added); *see*

*also* 20 C.F.R. § 416.967(b) ("To be considered capable of performing a full or wide range

of light work, you must have the ability to do substantially all of these activities"); SSR

83-10, 1983 WL 31251, at *6 ("full range of work" means "[a]ll or substantially all

occupations existing at an exertional level.").  Among such "additional limitations," the

ALJ explicitly limited James' ability to *stand* and *walk* by including a "sit ***stand*** option

permitting change in position every 30 minutes, if needed and without disturbing the

workplace," as well as a requirement for "an assisted device, such as a cane to ***ambulate***

during the work day."  (PageID.57) (emphasis added).

     Second, James' contention that "it's not clear how the sit-stand option would

substantially impact [his] ability to perform the full range of light work, or if a finding of

disability would have been appropriate – given the sit-stand option – under SSR 83-12"

lacks merit.  (ECF No. 16, PageID.604).  To the contrary, it can be reasonably inferred and

---

[3] For instance, James asserts, "without further reductions to the RFC finding with standing, it can be assumed that the RFC, generally, required James to be on his feet and standing for at least six hours out of an eight hour workday," *i.e.*, the "full range of light work."  (ECF No. 16, PageID.604)  Later in his motion, James goes so far as to say that the ALJ "conclu[ded] that [he] could perform a full range of light work, which requires standing or walking generally up to six hours out of an eight hour day."  (*Id.*, PageID.605).

clearly calculated from the ALJ's sit/stand option "permitting change in position ***every 30 minutes, if needed***" that the ALJ found James to be capable of standing for *at least* 4 hours, but that he *cannot be required* to stand *for longer than* 4 hours.  (PageID.57).  In other words, the ALJ's sit/stand option requiring James to stand for up to 4 hours in an 8-hour workday "falls in the middle between the requirements for *all* sedentary work (two hours) and *all* light work (six hours)," *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 48 (6th Cir. 2018).  *See also McMillan v. Comm'r of Soc. Sec.*, No. 16-12886, 2017 WL 3033339, at *8 (E.D. Mich. June 12, 2017) (nothing "fatally unclear" about a "sit/stand at will option at least every 30 to 45 minutes"); *Richards v. Comm'r of Soc. Sec.*, No. 16-10905, 2017 WL 892345, at *7 (E.D. Mich. Feb. 16, 2017) ("sit/stand, at-will, option every 30 minutes").  Simply put, careful analysis belies James' characterization of the ALJ's RFC as concluding "[he] could perform a full range of light work, which *requires* standing or walking generally up to *six* hours out of an eight hour day," (ECF No. 16, PageID.605) (emphasis added).[4]  Thus, the main premise underlying James' arguments in his motion for

_____

[4] James also broadly argues that "[e]ven with the allowance of a sit-stand option permitting a change in position every 30 minutes, the ALJ's RFC finding did not further specify any specific limitations with standing that would indicate a substantial reduction from the full range of light work."  (ECF No. 16, PageID.604).  But, again, the sit/stand option was sufficient to indicate a RFC for a reduced range of light work, as SSR 83-12 – which addresses "special situations" in which an individual needs to alternate between sitting and standing – expressly provides that "[s]uch an individual [requiring a sit/stand option] ***is not functionally capable of doing . . . the prolonged standing or walking contemplated for most light work***."  SSR 83-12, 1983 WL 31253, at *4.  Caselaw similarly confirms that "sit/stand options" are sufficient limitations indicating a "reduced range of light work."  *See, e.g., Baker v. Comm'r of Soc. Sec.*, No. 12-14530 2013 WL 6409955, at *17 (E.D. Mich. 2013) ("The ALJ did not identify the total amount of time Plaintiff could sit or stand in an eight hour workday, or indicate how frequently he would need to alternate between sitting and standing.  However, she did find that Plaintiff was capable of performing a limited ranged of light work provided he could alternate between sitting and standing at will."); *Arroyo v. Comm'r of Soc. Sec.*, No. 14-14358, 2016 WL 424939, at *2 (E.D. Mich. Feb. 4, 2016)

summary judgment – that "[t]he ALJ's finding that [he] could stand for up to six hours out of an eight hour workday is not supported by substantial evidence" – rests on a fatal misapprehension that the ALJ found James capable of performing the full range of light work. *See McMillan*, 2017 WL 3033339, at *7 ("The ALJ did not purport to restrict McMillan to a 'full range' of light work, and clearly restricted her to light work as modified by further functional limitations. This was not error.").[5]

Moreover, while the record contains some positive findings, the ALJ fully

---

("But SSR 83-12 expressly contemplates light work that requires alternating between sitting and standing ..."); *Viera v. Comm'r of Soc. Sec.*, No. 18-13476, 2019 WL 8750418, at *8 (E.D. Mich. Oct. 25, 2019) (reduced range of light work with sit/stand option), *report and recommendation adopted*, No. 18-13476, 2020 WL 1443445 (E.D. Mich. Mar. 25, 2020); *Collins v. Comm'r of Soc. Sec.*, No. 18-12401, 2019 WL 3421696, at *8 (E.D. Mich. June 30, 2019) (same), *report and recommendation adopted*, No. 18-12401, 2019 WL 3412744 (E.D. Mich. July 29, 2019).

[5] In footnote 3 of his motion, James argues in passing that "[i]f [his] sit-stand option would have limited [him] to *less than* six hours of standing or walking, *this would have raised* a separate issue regarding [his] ability to perform the lifting requirements for a full range of light work." (ECF No. 16, PageID.604 n.3) (emphasis added). Such a perfunctory reference to a *possible* issue is undeveloped and deemed to be waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the courts to . . . put flesh on its bones."); *see also Moats v. Comm'r of Soc. Sec.*, No. 20-00265, 2021 WL 2905079, at *18 (N.D. Ohio Jan. 8, 2021). In any case, a limitation to 4 hours of standing and walking is not inherently inconsistent with "frequent" lifting or carrying, which only means 1/3 to 2/3 of an 8-hour workday. *See Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 428 (affirming a finding of no disability where ALJ found RFC to "carry ten pounds frequently or twenty pounds occasionally, and stand or walk for two hours in an eight-hour workday" because the ALJ's hypothetical fully accounted for the fact that claimant's impairments precluded a full range of light work). The cases James cites, *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d 956 (E.D. Mich. 2017), and *Muma v. Comm'r of Soc. Sec.*, No. 19-11280, 2020 WL 5768999 (E.D. Mich. Sept. 28, 2020), are also factually distinguishable and inapplicable here, given that those cases dealt with the ALJ's failure to provide a "logical bridge" between the apparent inconsistencies within an ALJ's RFC express findings as to walking/standing limitations and lifting/carrying limitations. James has not specified, much less proven, any inherent inconsistency in the ALJ's RFC between a limitation to 4 hours of standing/walking (*i.e.*, 1/2 of the workday) and lifting and carrying between 1/3 to 2/3 of the workday.

considered that James "has been experiencing significant right hip pain since early 2017," was diagnosed with "severe osteoarthritis," and was recommended for "[a] total hip arthoplasty" in determining the RFC.  (PageID.58).  And, a review of the record confirms such RFC finding is supported by substantial evidence.  *Cutlip*, 25 F.3d at 286 (holding that, where substantial evidence supports the ALJ's RFC finding, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion.").  For instance, overall, the ALJ found "persuasive" the medical opinion from state agency consultant Dr. Robin Mika D.O., who opined that James could lift and/or carry (including upward pulling) 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of "[a]bout 6 hours in an 8-hour workday"; sit for a total of "[a]bout 6 hours in an 8-hour workday"; occasionally push and/or pull (including operation of hand and/or foot controls); occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl.  (PageID.87-95).  James' motion does not even mention, much less challenge the ALJ's reliance on,[6] Dr. Mika's opinion, which is substantial evidence supporting the ALJ's even more restrictive RFC that includes a sit/stand option and a requirement for an assistive device like a cane for walking.

To add further, while James points to a treatment note on March 11, 2019 diagnosing "severe osteoarthritis" and "significant join space narrowing and subchondral sclerosis of the acetabulum and femoral head" based on an MRI, the mere diagnosis of an impairment

---

[6] As such, James waived any challenge to the ALJ's reliance on Dr. Mika's opinion.  *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped claims are waived).

does not say anything about its *functional limitations*, which the claimant has the burden of proving. *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... of course, says nothing about the severity of the condition."); *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). In fact, that same treatment note, from almost nine months after James' alleged disability onset date, reflects that, despite complaints of "worsening pain . . . [and] range of motion," James reported that he was "***currently working at a restaurant and stands for over 10 hours a shift washing dishes***." (PageID.348). A "Hip Examination" further indicated "no erythema, ecchymosis or swelling"; "no obvious deformity or surrounding muscular atrophy noted"; "no significant tenderness to palpitation"; "[n]o palpable crepitus in the hips bilaterally"; his right hip had 90 degrees with pain at the end of flexion, 40 degrees on abduction, 25 degrees on adduction, 35 degrees with mild pain on external rotation, and 15 degrees with notable pain on internal rotation; he had "5-" out of 5 strength on flexion in his right hip, but otherwise 5/5 strength on hip extension, abduction, adduction, as well as 5/5 strength in knee extension and flexion; and his straight leg raise was "Negative." (PageID.349).[7]

---

[7] *See also, e.g.*, PageID.447 (x-ray of right hip in April 2019 finding "moderately severe DJD [degenerative join disease] right hip and mild to moderate DJD left hip" but "[n]o progression from 2017" when records showed only mild limitations); PageID.322 (April 2017 physical therapy report indicating ambulation and transfer status was "independent," he had no assistive device, his standing balance was "good," physical exams findings between "4-" and "5" strength in his right and left hips during flexion, extension, abduction, and adduction, as well as "4+" strength in his knee on flexion and "5" strength on extension, able to ambulate on "Even Terrain" for "Unlimited" distance with "minimal difficulty" and climb "15 steps" with "no difficulty"); PageID.407-08 ("Hip Examination" on August 2017 treatment note finding "no erythema, ecchymosis or

Finally, contrary to James' assertions, the March 29, 2019 consultative examination with Dr. Cynthia Shelby-Lane, M.D., also provides substantial evidence in support of the ALJ's RFC.  Specifically, Dr. Shelby-Lane noted that James "does have a cane *but did not use it during the [physical] exam*," during which he was found to have a "slight limp on the right side," his "[t]andem walk, heel walk, and toe walk are done slowly," he was "[a]ble to squat to 70% of the distance and recover and bend to 80% of the distance and recover," he had "[f]lexion of the knees 0-150," and "[s]traight leg raising while lying 0-50 [and] while sitting 0-90."  (PageID.297) (emphasis added).  She also assessed that, with some symptoms of pain, James could still sit, stand, bend, stoop, carry, squat and arise from squatting, and climb stairs, and that he could otherwise push, pull, button clothes, tie shoes, dress/undress, get on and off examining table normally without any pain.  (PageID.302).  A "Michigan Disability Determination Service Range of Motion" assessment sheet conducted that same day also appears to reflect that, on examination, James had normal range of motion in his "cervical spine," "lumbar spine," and "knee."  (PageID.300-01).  As to James' hip, he was limited on forward flexion to 40 out of 100 degrees in his right hip, and 50 out of 100 degrees in his left hip, but otherwise had normal range of motion on abduction, adduction, backward extension, internal rotations, and

---

swelling"; "no obvious deformity or surrounding muscular atrophy noted"; "no significant tenderness to palpitation"; "[n]o palpable crepitus in the hips bilaterally"; right hip had 105 degrees with pain at the end of flexion, 40 degrees on abduction, 25 degrees on adduction, 35 degrees with mild pain on external rotation, and 25 degrees with notable pain on internal rotation; 5/5 strength in his hip on flexion, extension, abduction, adduction, and 5/5 strength in knee extension and flexion; and "Negative" straight leg raise).

external rotation.  (PageID.300).[8]

In short, James fails to show any reversible error in the ALJ's RFC finding that he was capable of performing a reduced range of light work, which is supported by substantial evidence.  *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 33 (6th Cir. 2010) ("In step five, the ALJ noted that Anderson's RFC was for a limited range of light work.  Had Anderson been able to perform all light work, the regulations would have mandated a finding of "not disabled."  But because Anderson had additional physical limitations, i.e., difficulties standing for long periods of time, the ALJ considered the testimony of a [VE] to determine the availability of jobs that Anderson could perform with his limitations."); *see also Lee v. Comm'r of Soc. Sec.*, No. 19-10337, 2020 WL 1139710, at *6 (E.D. Mich. Mar. 9, 2020) (stating it is the claimant's burden "of proving the existence and severity of limitations caused by his impairments" and "that he has a more restrictive RFC than that assessed by the ALJ.").

### 2. The ALJ's Handling of Dr. Shelby-Lane's Opinion is Supported by Substantial Evidence

Next, James points to the ALJ's handling of Dr. Shelby-Lane's opinion as a source of reversible error.  As detailed above, Dr. Shelby-Lane performed a consultative exam of James on March 29, 2019.  (PageID.295-97).  Thereafter, Dr. Shelby-Lane opined as

---

[8] As will be addressed in further detail below, while James argues that Dr. Shelby-Lane's opinion of "frequent limitations" in standing and walking is inconsistent with the ALJ's RFC, the ALJ's sit/stand option requiring James to only stand for 4 hours falls within a restriction to between 1/3 to 2/3 of the 8-hour workday of standing and walking.  *See* SSR 83-10 ("'Frequent' means occurring from one-third to two-thirds of the time.").

follows:

> Based upon today's exam**,** including the history and physical exam, [James] has ***frequent limitations with standing, walking, stooping, squatting***, due to the findings noted above, which indicates a history of right hip pain with a limp on the right side, minimal tenderness to palpitation in the lower lumbar area, the use of a cane for balance and support, slow execution of tandem walk, heel walk and toe walk, and a limp on the right side.

(PageID.298) (emphasis added).

The ALJ found Dr. Shelby-Lane's opinion to be persuasive for the following reasons:

> Dr. Shelby-Lane, the consultative examiner (CE) examined the claimant on March 29, 2019, noting tenderness to palpitation in the lower lumbar area and limitations to straight leg raising on the right side. Dr. Shelby-Lane stated in a medical opinion that the claimant had frequent limitations with standing, walking, stooping, and squatting, due to the exam findings. [James] had a history of right hip pain with a limp on the right side, minimal tenderness to palpitation in the lower lumbar area, the use of a cane for balance and support, slow execution of tandem walk, heel walk and toe walk, and a limp on the right side.
>
> * * * * * *
>
> The opinion of the CE was persuasive based on her exam noting frequent postural limits, right hip pain with a limp on the right side, minimal tenderness to palpation in the lower lumbar area, the use of a cane for balance and support, slow execution of tandem walk, heel walk and toe walk, and a limp on the right side. Based on the CE opinion, use of a cane was added to the RFC.

(PageID.59) (citations omitted).

In his motion, James argues that, because "frequent," according to Agency policy, "means anything from one third to two thirds of the workday," it is "reasonable to conclude that [Dr. Shelby-Lane's] opinion [of 'frequent' limitations with standing and walking] is

17

consistent with a reduction in standing and walking between one third and two thirds of the workday." (ECF No. 16, PageID.605). He contends that Dr. Shelby-Lane's opinion is therefore "inconsistent with the ALJ's conclusion that James could perform a full range of light work, which requires standing or walking generally up to six hours out of an eight hour day." (*Id.*, PageID.605). This argument lacks merit.

As discussed above, it is clear from the ALJ's decision that she assessed James could perform a *reduced* range of light work by including a sit/stand option every 30 minutes (as well as a walking aid for ambulation). Moreover, a closer look at the ALJ's RFC finding that James could perform a reduced range of light work with a sit/stand option requiring no more than 4 hours of standing reflects that such finding is not at all inconsistent with James' own assertion in his brief that "Dr. Shelby-Lane's opinion corresponded with *at minimum* an approximately 2.67 hour (rounded) reduction in standing and walking, and at most a 5.33 hour (rounded) reduction in standing and walking." (ECF No. 16, PageID.605) (emphasis in original). In other words, the ALJ's sit/stand option requiring no more than 4 hours of standing falls within Dr. Shelby-Lane's opined range of "frequent limitations" restricting James to standing and walking between 2.67 and 5.33 hours.[9]

James' other argument that "the ALJ fails to explain how Dr. Shelby-Lane's

---

[9] The parties dispute the interpretation of "frequent limitations" in Dr. Shelby-Lane's opinion. (ECF No. 17, PageID.634 (construing "as an opinion that [James] could perform the limited activities *on a frequent basis*, rather than an opinion that [he] was *frequently* precluded from performing the activities at all); ECF No. 18, PageID.640-41 ("A reasonable interpretation of Dr. Shelby-Lane's findings is therefore that James's limitations would prevent him from standing, walking, stooping, or squatting *at least* 1/3 of the workday, and potentially up to 2/3 of the day."). But the conclusion from either interpretation is the same – the opinion limits James to standing or walking for 1/3 to 2/3 of the workday.

limitations were actually incorporated into the RFC finding or in a proper hypothetical to the VE" is similarly misguided.  Again, as to the RFC, the ALJ included a "sit stand option permitting change in position every 30 minutes, if needed and without disturbing the workplace," *i.e.*, allowing up to 4 hours of standing, which is consistent with Dr. Shelby-Lane's opinion.  (PageID.57).  Further, the ALJ expressly stated, "[b]ased on the CE opinion, use of a cane was added to the RFC."  (PageID.59).

As to questioning the VE, the ALJ proposed hypothetical questions regarding an individual with the same vocational profile and limitations as James, *including* a "sit/stand option permitting change in position every 30 minutes, if needed, and without disturbing the workplace," *and* "requir[ing] an assistive device such as a can[e] to ambulate during the workday," to which the VE testified that such individual could perform light, unskilled work as a garment sorter (55,000 jobs nationally), mail clerk (51,000 jobs), and folder (53,000 jobs).  (PageID.80-81).[10]

Based on all of the above, James simply fails to show reversible error in the ALJ's assessment of Dr. Shelby-Lane's opinion, which is consistent with the RFC finding.

3.  *The ALJ's Evaluation of James' Subjective Complaints is Supported by Substantial Evidence*

Finally, James argues that the ALJ's finding that there were "inconsistencies" between his subjective complaints and the record evidence "fails to 'draw an accurate and logical bridge' between the evidence and the result" because "the ALJ failed to identify

---

[10] James does not contest the VE's conclusions and, thus, waived any such challenges to them. *See Kennedy*, 87 F. App'x at 466 (undeveloped claims are waived).

any specific inconsistencies between James' statement[s] and the rest of the evidence later on in [the ALJ's] reasoning." (ECF No. 16, PageID.608). The ALJ's evaluation of a claimant's subjective symptoms is entitled to "special deference," *Biestek*, 880 F.3d at 788, and cannot be disturbed absent a "compelling reason." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013). No such compelling reason exists here.

The ALJ articulated several facts in support of her evaluation of James' subjective complaints. First, the ALJ noted that James' statements "are inconsistent because while he may use a cane, he did no[t] use it at the CE exam." (PageID.58). James acknowledges that "the ALJ suggested some inconsistency between [his] statement that he used a cane and the CE's notation that [he] had a cane but did not use it during the examination," but nonetheless argues that "this, alone, is not a good enough reason to find that [his] subjective complaints were entirely unsupported." (ECF No. 16, PageID.608). But the ALJ did not find, as James contends, that his subjective complaints were "*entirely unsupported*"; rather, the ALJ found that they were "*not entirely consistent*" with the record evidence. (PageID.58) ("the claimant's statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ."). And, in light of the notation in the record from the CE exam about James not using a cane at that time, there was, in fact, an inconsistency. Moreover, while James claims that "Dr. Shelby-Lane ultimately concluded that there was a documented medical need for [his] use of a cane, thus supporting [his] allegation that he needed it" (ECF No. 16, PageID.608), a closer review of the relevant Neurologic and Orthopedic Supplemental Report reflects that Dr. Shelby-Lane assessed that a walking aid

20

was necessary to "Reduce Pain," but notably left *unchecked* the box indicating that a walking aid was "Needed; Would Fall Without Aid; Clinically Req'd." (PageID.303). In any case, the ALJ expressly included a requirement for a cane, as well as a sit/stand option, based in part on James' testimony that he "uses a cane that is not prescribed, and wears a back brace sometimes" and "need[s] to alternate positions to alleviate pain symptoms." (PageID.57 ("The claimant uses a hand held assistive device, so the RFC included a limitation for use of a cane when ambulating"); PageID.60 ("The claimant testified as to a need to alternate positions to alleviate pain symptoms, so the claimant must be permitted to alternate between sitting and standing every 30 minutes.")).

The ALJ also noted that, while an "x-ray series from April 15, 2019, showed moderately severe degenerative joint disease of the right hip, mild to moderate of the left," the "degeneration was stable with no change since 2017."[11] (PageID.58). And, the ALJ found persuasive Dr. Mika's opinion that James was capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently, as well as standing/walking for 6 hours out of an 8-hour workday. (PageID.59). With regards to Dr. Shelby-Lane's opinion, the ALJ noted that, despite "right hip pain with a limp on the right side," there was "minimal tenderness to palpitation in the lower lumbar area," James was "able to squat to 70% of the distance and recover and bend to 80% of the distance and recover," he had "flexion of the knees 0-150," and "[s]traight leg raising while lying 0-50, while sitting 0-90." (PageID.60). All of the above is substantial evidence supporting the ALJ's conclusion that the medical record

---

[11] As noted above, in 2017, James' limitations were quite mild. *See supra* at 14-15 n.7.

indicated James' "symptoms waxed and waned, remitted and relapsed but w[]ere not so chronic or severe as to prevent all work." (PageID.58).

Finally, as the Commissioner points out, medical treatment records reflect that *James* himself reported on May 15, 2018 that he has been "working in construction for about 20 years and is ***currently hanging drywall***" (PageID.289) (emphasis added), and that as recently as March 11, 2019, James reported that "[h]e is currently working at a restaurant and ***stands for over 10 hours a shift washing dishes***," despite concurrent complaints that his "range of motion has [] worsened" and that he has "pain" of "8 out of 10." (PageID.348) (emphasis added). James' report on March 11, 2019 to doctors that he was working as a restaurant dishwasher is further corroborated by similar reports a few weeks later to Dr. Shelby-Lane during the consultative exam on March 29, 2019, in which Dr. Shelby-Lane notes under "Work History" that "[James] states that ***he is a dishwasher now*** at the Rooster Tail." (PageID.296) (emphasis added). While James states that "neither of these claims were addressed by the ALJ either at the hearing or in her decision," it is well settled that the ALJ need not discuss every piece of evidence in the record, *see Kornecky*, 167 F. App'x at 508, and that the Court "may look to any evidence in the record, regardless of whether it has been cited by the [ALJ]," *Heston*, 245 F.3d at 535; *Walker*, 884 F.2d at 245.[12] The referenced statements are clearly inconsistent with many of James' other subjective reports.

---

[12] James cites to no authority for his wholly conclusory assertion that his own medical records documenting *his* reports to doctors that he was hanging drywall and standing 10 hours per day as a dishwasher "should be rejected" because "[a]t this point, they remain nothing more than unresolved factual questions, and cannot be considered substantial evidence to support the ALJ's conclusions." (ECF No. 18, PageID.645).

For all of the above reasons, the ALJ's evaluation of James' subjective complaints is supported by substantial evidence in the record.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 17)** be **GRANTED**, James' Motion for Summary Judgment **(ECF No. 16)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: August 15, 2022                     s/David R. Grand
Ann Arbor, Michigan                       DAVID R. GRAND
                                          United States Magistrate Judge


## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 15, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager